UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RICHARD KEITH JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:13-cv-00123-JMS-MJD |
| ) | |
| HEATHER WALLACE Correctional Officer, ) | |
| F. BRANNICK Correctional Officer, ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Motion for Summary Judgment**

Plaintiff Richard Johnson ("Johnson") is an inmate of the Indiana Department of Correction ("IDOC"). He complains of the treatment he received while housed at the Wabash Valley Correctional Facility. Specifically, he alleges that the defendant correctional officers, Heather Wallace and F. Brannick, were responsible for denying or delaying his medical treatment for a seizure in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.[1] The defendants deny these allegations and seek resolution of the claims alleged against them through summary judgment.

For the reasons explained below, the defendants' motion for summary judgment [dkt. 37] is **granted.**

---

[1] All other claims were dismissed consistent with the Entry of May 10, 2013. See dkts. 6 and 10 (Entry on Motion to Reconsider).

# I. STANDARD OF REVIEW

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Proc. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Proc. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. Fed. R. Civ. Proc. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Proc. 56(e).

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved for the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex,* 477 U.S. at 330.

## II. MATERIAL FACTS

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts supported by admissible evidence and the disputed evidence are presented in the light reasonably most favorable to Johnson as the non-moving party with respect to the motions for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

At the relevant time, plaintiff Johnson was incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"). Officer Wallace and Officer Brannick are correctional officers at Wabash Valley. On December 30, 2011, the defendants were working in the "SCU unit"[2] where Johnson was housed.

At approximately 11:00 a.m., Officer Wallace saw Johnson who complained he needed medical attention because he might have a seizure. Johnson has described his sense that he might have a seizure as an "aura." Officer Wallace told Johnson that she would not stop passing lunch trays to call medical.[3] Because Johnson's cuff port was open for the passing of lunch trays, Johnson was able to reach the intercom located outside of his cell. He repeatedly used the intercom to request medical attention and to speak with the sergeant in charge.[4]

---

[2] The parties do not define "SCU."
[3] See Complaint, dkt. 1 at p. 3 (signed under penalty of perjury). "A verified complaint is the equivalent of an affidavit for summary judgment purposes." *Devbrow v. Gallegos,* 735 F.3d 584, 587 (7th Cir. 2013) (citing 28 U.S.C. § 1746; *Ford v. Wilson,* 90 F.3d 245, 246–47 (7th Cir. 1996); *Hart v. Hairston,* 343 F.3d 762, 765 (5th Cir .2003); *Roberson v. Hayti Police Dep't,* 241 F.3d 992, 994–95 (8th Cir. 2001)). The Court reviewed the complaint for admissible evidence relevant to the plaintiff's remaining claims.
[4] *Id.* at p. 3.

Officer Wallace personally contacted medical staff personnel, Nurse Crecelius.[5] Officer Wallace told Nurse Crecelius that Johnson wanted to see medical and that Johnson stated he felt a seizure coming on. Officer Wallace was informed by Nurse Crecelius that she would see Johnson when she arrived in the SCU. This is the course of action Officer Wallace is instructed to take when an offender requests medical attention.

After contacting the Nurse, Officer Wallace placed a pad lock on Johnson's cuff port (under orders from Sergeant Shroyer), the effect of which was that Johnson could no longer reach the intercom button outside his cell. At that time the cuff port was closed, Officer Wallace had already contacted medical, reported Johnson's complaint, and placed a request for Johnson to be seen by medical personnel.

Johnson testified in his complaint that at 2:30 p.m. he awoke laying on the floor of his cell in blood, urine and vomit.[6] The blood was a result of a small laceration on his forehead. At 3:00 p.m. Johnson again informed Officer Wallace that he needed medical attention and in response she threatened to issue Johnson a conduct report for self-mutilation. Complaint at p. 3. Johnson then decided to start a fire outside of his cell door. As he expected, several officers responded. Johnson

---

[5] Johnson disputes this fact, but there is no admissible evidence to contradict Officer Wallace's affidavit indicating she contacted medical staff on December 30, 2011. In support, Johnson cites to his Exhibit C. Dkt. 41-1. This document appears to be an email from Nurse Crecelius which states that Johnson told her that he had a seizure and that there was a small scratch on his forehead which appeared to have dry KoolAid smeared in it. This email does not contradict Officer Wallace's affidavit. Johnson also asserts that because he self-reported the seizure, Officer Wallace must not have contacted medical. In support of this assertion Johnson provides Elisabeth Lamson's statement in a Grievance Staff Response about what the nurse told her Johnson had said; "it was not until this assessment that the offender self-reported to the nurse that he 'had had a seizure.'" (Dk. No. 42, Pl.'s Mem. Supp. of Pl.'s Resp. 8-9.) Again this is inadmissible hearsay and it cannot be inferred from this record that Officer Wallace failed to contact medical to report that Johnson was requesting medical assistance because he felt a seizure coming.

[6] Johnson claims that he had a seizure. The defendants would dispute this claim at trial, but for the purposes of defendants' motion for summary judgment, it is assumed that Johnson did have a seizure at some point on December 30, 2011, which resulted in a minor scratch to his forehead.

was sprayed with a chemical (by non-parties to this suit) and then taken to the medical exam room where he was seen by Nurse Crecelius. The nurse wiped off the wound on Johnson's forehead and applied ointment. No other medical care was administered.

At no point on December 30, 2011, did Officer Wallace see Johnson have a seizure. At no point prior to December 30, 2011, had Officer Wallace witnessed Johnson have a seizure. Officer Wallace never saw any signs of urine, blood, or vomit, on his cell floor or any other signs that might signal Johnson had suffered a seizure. When Officer Wallace completed security checks on December 30, 2011, Johnson was conscious on every check. As a correctional officer, Officer Wallace has no control over the responsiveness of medical, including the time they take to reach an offender. When on duty, Officer Wallace is unable to leave the range to which she is assigned to physically retrieve a member of medical to see an offender. Officer Wallace also is not authorized nor trained to provide medical attention to an offender.

Officer Brannick never saw Johnson lying unresponsive on his cell floor. Officer Brannick was informed by the chaplain that Johnson may have needed medical assistance. However, Officer Brannick observed Officer Wallace leave the range and there were no signs of any problems on the range. Officer Brannick believed that if Johnson needed medical assistance, that request had been addressed by the other officer assigned to that range. Johnson did not notify Officer Brannick on December 30, 2011, that he felt a seizure coming on. Officer Brannick did not see Johnson lying unresponsive on his cell floor at any point on December 30, 2011. When Officer Brannick saw Johnson (after he lit the fire outside his cell), he was standing and did not request medical attention. Johnson did not request medical attention from Officer Brannick at any point on December 30, 2011.

### III. DISCUSSION

Both Officer Brannick and Officer Wallace argue that they are entitled to summary judgment in their favor because there is no evidence upon which a reasonable jury could find that they were deliberately indifferent to Johnson's serious medical needs. Johnson disputes the defendants' conclusions.

## A. Eighth Amendment

The Eighth Amendment prohibits cruel and unusual punishment; that guarantee encompasses a prisoner's right to medical care. Deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). But negligence, even gross negligence, does not violate the Constitution. *Id.* at 105–06; *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). Only deliberate indifference or worse in the face of a serious medical need will do. *Estelle*, 429 U.S. at 103–04; *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008).

The standard of "deliberate indifference to serious medical needs" has been interpreted to contain both an objective element and a subjective element. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The objective element requires "that the inmate's medical need be sufficiently serious." *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). The subjective element requires "that the prison official acted with a sufficiently culpable state of mind." *Walker v. Benjamin*, 293 F.3d 1030 (7th Cir. 2002). This is because deliberate indifference exists only when an official "knows of and disregards an excessive risk to an inmate's health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (construing *Estelle*).

For the purposes of the motion for summary judgment, the defendants do not dispute that a seizure is a serious medical condition.

Johnson alleges that the actions of Officers Wallace and Brannick delayed his access to medical treatment. A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain. *Estelle*, 429 U.S. at 104–05; *Gayton v. McCoy*, 593 F.3d 610, 619 (7th Cir. 2010); *Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007). The Seventh Circuit has explained that "[d]elay is not a factor that is either always, or never, significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

In this case, there is no evidence the defendant officers delayed Johnson's medical treatment. Officers Wallace and Brannick were not responsible for administering medical care to Johnson; rather, they were "entitled to defer to the judgment of [] health professionals so long as [they] did not ignore [the prisoner]." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). They had no reason to believe that prison medical providers were mistreating or failing to properly respond to Johnson's medical needs. *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). There is no evidence that emergency medical treatment was necessary or that medical staff improperly responded to Johnson's medical condition. The defendant officers were not trained to intervene when an inmate reports that he is experiencing an aura and expects that he will have a seizure and so they lacked the capacity to judge whether the medical professionals delay in evaluating Johnson was inappropriate. Further, Johnson does not suggest how the officers should have intervened in way that would have stopped the seizure from occurring or would have reduced any pain or injury.

## B. Officer Wallace

In this case Officer Wallace notified the nursing staff of Johnson's complaint that he felt a seizure coming on. This was a reasonable response given the condition complained of, that is, a potential future seizure. The evidence reflects that Officer Wallace did not disregard Johnson's health, but rather facilitated Johnson's ability to pass his medical concerns on to the appropriate personnel. Wallace was confronted with an offender who felt he might have a seizure, not an offender actively having one. At no point on December 30, 2011, did Officer Wallace see Johnson have a seizure or any signs that might signal Johnson had suffered a seizure.

Officer Wallace did put a padlock on Johnson's cuff port which prevented him from using the intercom system to continue to request medical attention that had already been requested. This padlock did not prevent Johnson from accessing medical care. Under these circumstances, Officer Wallace cannot be held liable for closing Johnson's cuff port.

## C. Officer Brannick

Officer Brannick, was never notified that Johnson was experiencing pre-seizure feelings. Johnson claims that because Officer Brannick was assigned to the range on which he was housed on December 30, 2011, he is liable. But this is not the standard to establish liability. In order to be held responsible for the violation of a federally secured right for which a remedy in damages is sought pursuant to 42 U.S.C. ' 1983, an individual must have personally participated in the alleged constitutional deprivation. *Zimmerman v. Tribble,* 226 F.3d 568, 574 (7th Cir. 2000). Thus, "some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) (citing *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983)). It takes more than proximity to wrongdoing to support liability in a civil rights action. *Hessel v. O'Hearn*, 977 F.2d 299, 305 (7th

Cir. 1992). The evidence reflects that Officer Brannick did not see Johnson on December 30, 2011, until after Johnson reported a seizure and set a fire outside of his cell. It was at this time that Officer Brannick was called to address the situation. When Officer Brannick saw Johnson, he was standing and did not request medical attention. Officer Brannick did not see Johnson lying unresponsive on his cell floor at any point on December 30, 2011.

Officer Brannick's only knowledge that Johnson might need medical attention came from the chaplain. However, Officer Brannick observed another correctional officer, Officer Wallace, leave the range and he did not observe any signs of problem on the range. Officer Brannick operated under the good faith, reasonable assumption that if Johnson needed medical assistance, the other assigned correctional officer, Officer Wallace, had handled that request.

Johnson suggests, for the first time, in his summary judgment response an alternative theory of liability against Officer Brannick. Johnson argues that he was engaging in self harm by banging his head on the desk, the result of which was a superficial wound to the forehead. He states that Officer Brannick saw this behavior and failed to call for immediate medical attention. In support of this assertion, Johnson submits the hearsay statements contained in a grievance response. See dkt. 41-1 at p. 10, Pl.'s Exh. G. The grievance response was written by Elisabeth Lamson. That response states:

> [T]he offender does not get to choose his medical provider, he should take his meds per Rx. Medial staff were called to the housing unit to assess the offender after being sprayed with OC, it was not until this assessment that the offender self reported to the nurse that he "had had a seizure" custody staff advised the nurse that the offender had been seen "banging his head on the desk", the wound on his forehead was superficial and the nurse provided appropriate first aid to the wound.

See dkt. 41-1 at p. 10, Pl.'s Exh. G. This grievance response does not suggest that Officer Brannick was the custody staff member who advised the nurse that Johnson was seen banging his head on the desk. This hearsay statement is insufficient to create a material fact in dispute regarding

whether Officer Brannick observed Johnson banging his head on the desk such that medical staff should have been called. There is simply no evidence that Officer Brannick was deliberately indifferent to Johnson's serious medical need, whether that need was a result of self-harm or a seizure.

### IV. CONCLUSION

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Johnson has not identified a genuine issue of material fact as to his claims in this case, and the defendants are entitled to judgment as a matter of law. The defendants' motion for summary judgment [dkt. 37] is **granted.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: August 22, 2014

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

RICHARD KEITH JOHNSON
926081
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels

1000 Van Nuys Road
NEW CASTLE, IN 47362

All Electronically Registered Counsel